SPECIAL COMMODITY GROUP ON NON-RUBBER FOOTWEAR FROM BRAZIL, AMERICAN ASSOCIATION OF EXPORTERS AND IMPORTERS, Plaintiff,

v.

The Honorable Malcolm BALDRIDGE, Secretary of Commerce of the United States, and, The Honorable Donald T. Regan, Secretary of the Treasury of the United States, and, The Honorable William Von Raab, Commissioner of Customs, Defendants.

Court No. 83-3-00458.

United States Court of International Trade.

Nov. 23, 1983.

Plaia, Schaumberg & Dekieffer, Chartered, Herbert C. Shelley, Washington, D.C., on the motion, for plaintiff.

J. Paul McGrath, Asst. Atty. Gen., David M. Cohen, Director, Commercial Litigation Branch, Washington, D.C., Velta Melnbrencis, New York City, on the motion, for defendants.

## MEMORANDUM OPINION AND ORDER

CARMAN, Judge:

### INTRODUCTION

In this action, plaintiff seeks, among other things, a writ of mandamus to compel the Secretary of the Treasury and the Commissioner of Customs to liquidate certain entries of non-rubber footwear imported from Brazil. Plaintiff also moves for a preliminary injunction to enjoin the Secretary of Commerce (a) from issuing a final determination in an annual administrative review of a countervailing duty order under section 751 of the Tariff Act of 1930, as amended, 19 U.S.C. § 1675(a) (1982), covering January 4, 1980 to December 31, 1980 entries of certain non-rubber footwear from Brazil; (b) from directing the United States Customs Service (Customs) to assess any countervailing duties on those entries

greater than the amount already deposited with Customs as estimated countervailing duties; and, (c) from conducting a further administrative review of such entries from January 1, 1981, through September 11, 1981. Defendant cross-moves to dismiss for lack of jurisdiction and failure to state a claim as to which relief may be granted.

The facts in this case are not in issue. In September 1974, a countervailing duty order was issued covering certain non-rubber footwear from Brazil. 39 Fed.Reg. 32,903 (1974). On January 4, 1980, Customs published a notice in the Federal Register suspending liquidation of all entries of non-rubber footwear from Brazil and requiring the deposit of an estimated countervailing duty at the rate of 1 percent on all future entries. 45 Fed.Reg. 1013 (1980). Plaintiff members continued to deposit estimated countervailing duties for entries in the amount of 1 percent pursuant to the notice of January 4, 1980. The Department of Commerce (Commerce, which had assumed the duties of administering the countervailing duty laws from the Treasury Department, indicated on March 9, 1983, see 48 Fed.Reg. 9901 (1983), that it had conducted a preliminary administrative review and had preliminarily determined that net subsidies on exports from December 7, 1979, through December 31, 1979, were 4.77 percent and that net subsidies on exports from January 1, 1980 to December 31, 1980 were 3.48 percent. *Id* at 9903. The Department of Commerce has not indicated when the final administrative review for 1980 entries will be completed.[1] Commerce has not indi-

---

**1.** The International Trade Commission (ITC) apparently informed the Commerce Department on October 29, 1981, that it had received a request for an injury determination as provided in section 104(b)(1) of the Trade Agreements Act of 1979, 19 U.S.C. § 1671 note (1982) with regard to non-rubber footwear from Brazil. Commerce was to suspend the liquidation of entries made on or after October 29, 1981, and collect estimated countervailing duties pending the determination of the ITC. The ITC determined on May 24, 1983, that an industry in the United States would not be materially injured or threatened with material injury, nor would the establishment of an industry in the United States be materially retarded by reason of im-

ports of certain non-rubber footwear from Brazil covered by the outstanding countervailing duty order if the order were to be revoked. *See* 48 Fed.Reg. 24,796 (1983). Commerce, pursuant to section 104(b)(4) of the Trade Agreements Act of 1979, 19 U.S.C. § 1671 note, and as the administering authority, presumably will revoke the countervailing duty order in effect with regard to non-rubber footwear from Brazil, and refund, without interest, any estimated countervailing duties collected during the period of suspension of liquidation (which commenced on October 29, 1981). Accordingly, it would seem non-rubber footwear from Brazil entered since October 28, 1981 will not be affected by

cated whether the net amount of the bounty paid or bestowed upon non-rubber footwear from Brazil will be higher or lower than the 1 percent ad valorem rate that has been collected as estimated countervailing duties upon entry.

Plaintiff commenced this action on March 30, 1983, more than 3 years after the publication of the notice of January 4, 1980, suspending liquidation. The plaintiff asserts that, pursuant to 19 U.S.C. § 1504 (1982), all entries must be liquidated within 1 year from the date of entry unless, among other reasons, liquidation is suspended as required by statute or court order.[2] Plaintiff also claims that this court has jurisdiction pursuant to 28 U.S.C. § 1581(i) (Supp. V 1981),[3] since the subject matter of this action arose out of 19 U.S.C. § 1504, and concerns the liquidation of entries subject to a countervailing duty order. Plaintiff declares further that this court should assume jurisdiction in this matter pursuant to 28 U.S.C. § 1581(i), since sections 701–707 of the Tariff Act of 1930, as amended, 19 U.S.C. §§ 1671–1671f (1982)

cover assessments of countervailing duties against subsidized imports to the United States.

Defendant contends that a preliminary determination to suspend liquidation of entries pending a section 751 annual review to assess countervailing duties in the liquidation of entries can only be reviewed pursuant to 19 U.S.C. § 1516a(c) and 28 U.S.C. § 1581(c) (Supp. V 1981) when there has been a final administrative determination. Defendant cites *United States v. Uniroyal, Inc.,* 69 CCPA ——, 687 F.2d 467 (1982), for the proposition that the judicial review provisions of 19 U.S.C. § 1516a (1982) cannot be circumvented by characterizing a challenge to preliminary decisions during the course of a section 751 administrative review of a countervailing duty order as an action to enforce the provisions of 19 U.S.C. § 1504(a), invoking the jurisdiction of the court pursuant to 28 U.S.C. § 1581(i).

The court concludes, for the reasons set forth below, that although subject matter jurisdiction exists under 28 U.S.C.

---

continuing section 751, 19 U.S.C. § 1675(a), administrative reviews.

**2.** 19 U.S.C. § 1504(a), (b) (1982) provides:
(a) Liquidation
Except as provided in subsection (b) of this section, an entry of merchandise not liquidated within one year from:
(1) the date of entry of such merchandise;
(2) the date of the final withdrawal of all such merchandise covered by a warehouse entry; or
(3) the date of withdrawal from warehouse of such merchandise for consumption where, pursuant to regulations issued under section 1505(a) of this title, duties may be deposited after the filing of an entry or withdrawal from warehouse;
shall be deemed liquidated at the rate of duty, value, quantity, and amount of duties asserted at the time of entry by the importer, his consignee, or agent. Notwithstanding section 1500(e) of this title, notice of liquidation need not be given of an entry deemed liquidated.
(b) Extension
The Secretary may extend the period in which to liquidate an entry by giving notice of such extension to the importer, his consignee, or agent in such form and manner as the Secretary shall prescribe in regulations, if—
(1) information needed for the proper appraisement or classification of the merchan-

dise is not available to the appropriate customs officer;
(2) liquidation is suspended as required by statute or court order; or
(3) the importer, consignee, or his agent requests such extension and shows good cause therefor.

**3.** 28 U.S.C. § 1581(i) provides:
In addition to the jurisdiction conferred upon the Court of International Trade by subsections (a)–(h) of this section and subject to the exception set forth in subsection (j) of this section, the Court of International Trade shall have exclusive jurisdiction of any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for—
(1) revenue from imports or tonnage;
(2) tariffs, duties, fees, or other taxes on the importation of merchandise for reasons other than the raising of revenue;
(3) embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety; or
(4) administration and enforcement with respect to the matters referred to in paragraphs (1)–(3) of this subsection and subsections (a)–(h) of this section.

§ 1581(i), the action must be dismissed for failure to state grounds under which relief can be granted.

■ The initial question is whether this court has subject matter jurisdiction pursuant to 28 U.S.C. § 1581(i) enabling it to compel Customs to liquidate merchandise after 1 year from date of entry while a section 751 annual review is in progress.

In *American Air Parcel Forwarding Co. v. United States,* 1 CIT 293, 515 F.Supp. 47 (1981), the court, while examining the statutory and regulatory authority of the Customs Service to receive uncertified checks, construed the jurisdictional provisions of the Customs Court Act of 1980 and stated:

[T]his case comes within the broad "residual grant of jurisdictional authority" of this court as described in 28 U.S.C. § 1581(i) * * * * In particular, paragraphs (i)(1) and (4) confer jurisdiction over any civil action

"that arises out of any law of the United States providing for—

"(1) revenue from imports or tonnage

* * * * * *

"(4) administration and enforcement with respect to matters referred to in paragraphs (1)–(3) of this subsection * * *"

This court's jurisdiction over plaintiff's cause of action "arises out of [a] law of the United States" * * * and the Customs Service's administration and enforcement of its regulations.

*Id.* at 295, 515 F.Supp. at 50.

This analysis is instructive in the matter at hand. The instant case is concerned with laws providing for revenue as well as the administration and enforcement of regulations of the Customs Service.

The difference between *American Air Parcel* and the instant matter is the former construed a statute and regulations concerning the acceptance of uncertified checks while the latter has been presented with statutes to construe, i.e. 19 U.S.C. § 1504 and § 1675 in regard to liquidation and countervailing duty review.

In *United States v. Uniroyal, Inc.,* 69 CCPA ——, 687 F.2d 467 (1982), the court established that while the jurisdictional grant under 28 U.S.C. § 1581(i) is in addition to the jurisdiction conferred upon this court in subsections (a)–(h) of 28 U.S.C. § 1581, Congress did not intend *generally* that § 1581(i) be used to circumvent subsections (a)–(h) of 28 U.S.C. § 1581.

In the concurring opinion of Judge Nies in *Uniroyal,* which was cited by the majority with approval[4], the notion was expressed:

[T]he broad subject matter jurisdiction of the court under § 1581(i) may be invoked only when no other remedy is available or the remedies provided under other provisions of 28 U.S.C. § 1581 are manifestly inadequate.

*United States v. Uniroyal, Inc.,* 69 CCPA at ——, 687 F.2d at 475 (Nies, J., concurring).[5]

---

**4.** The majority stated: "[T]he legislative history of § 1581 further evidences Congress' intention that subsection (i) not be used generally to bypass administrative review by meaningful protest." *United States v. Uniroyal, Inc.,* 69 CCPA ——, ——, 687 F.2d 467, 472 (1982). Further, the majority wrote: "As the concurring opinion indicates, this construction is consistent with pre-1980 precedent from the district courts." *Id.* at —— n. 15, 687 F.2d at 472 n. 15.

**5.** Judge Nies noted that prior to the enactment of the Customs Court Act of 1980, Pub.L. No. 96–417, § 201, 94 Stat. 1727, 1728–29, federal courts were consistent in holding that section 1581(i) jurisdiction was available only where the other section 1581 remedies were manifestly inadequate. "The precedent with respect to the *exercise* of jurisdiction by district courts, whose subject matter jurisdiction was transferred to the Court of International Trade by § 1581(i), generally reflects this standard." *United States v. Uniroyal, Inc.,* 69 CCPA at —— n. 9, 687 F.2d at 475 n. 9 (Nies, J., concurring) (emphasis added) (citing *United States Cane Sugar Refiners' Ass'n. v. Block,* 69 CCPA ——, —— n. 5, 683 F.2d 399, 402 n. 5 (1982); *Jerlian Watch Co. v. United States Department of Commerce,* 597 F.2d 687, 692 (9th Cir.1979) (per curiam); *Flintkote Co. v. Blumenthal,* 596 F.2d 51, 58 (2d Cir.1979); *Sneaker Circus, Inc. v. Carter,* 566 F.2d 396, 399 (2d Cir.1977); *Timken Co. v. Simon,* 539 F.2d 221, 226 n. 7 (D.C.Cir.1976)). Judge Nies went on to note that simply because "the controversy

In *Uniroyal,* although the court spoke of jurisdiction, its concern was what administrative and judicial remedies were available and when subsections of 28 U.S.C. § 1581 should be used or invoked in pursuit of those remedies.

Whether or not a complaint states a claim upon which relief may be granted should not be confused with the threshold question of the jurisdiction of the court over the subject matter.

In *Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939 (1946), the Court held subject matter jurisdiction of a court cannot be defeated on the theory that the allegations of the plaintiff fail to state grounds upon which relief may be granted. The Court observed:

> [F]ailure to state a proper cause of action calls for a judgment on the merits and not a dismissal for want of [subject matter] jurisdiction. Whether the complaint states a cause of action on which relief could be granted is a question of law, and just as issues of fact, it must be decided *after* and *not before* the court has assumed jurisdiction over the controversy. If the court does later exercise its jurisdiction to determine that the allegations in the complaint do not state a ground for relief, then dismissal of the case would be on the merits, not for want of jurisdiction.

*Id.* at 682, 66 S.Ct. at 776 (emphasis added).

In *Bush v. State Industries Inc.,* 599 F.2d 780 (6th Cir.1979), the court pointed out that in determining whether a federal court has jurisdiction over the subject matter, it must ascertain whether the case arises under the Constitution or federal statutes and has not been advanced solely to obtain federal jurisdiction. Whether a complaint fails to state a claim upon which relief can be granted is irrelevant to the question of subject matter jurisdiction.

This analysis of federal jurisdiction (under 28 U.S.C. § 1331 (Supp. V 1981) is directly applicable when considering Court of International Trade jurisdiction under section 1581(i). *See American Air Parcel Forwarding Co.,* 1 CIT at 296, 515 F.Supp. at 51. Indeed, just as the plaintiff in *Bell v. Hood* was entitled to have his claim heard in federal court because his complaint was "so drawn as to seek recovery" under federal law, so too the plaintiff in the instant case may assert section 1581(i) jurisdiction since the gravamen of the complaint seeks relief which "arises out of" laws relating to "revenue from imports" and "administration and enforcement" with respect to international trade matters. This is so irrespective of any substantive attacks against the complaint[6].

Having decided that the court has subject matter jurisdiction, it must be deter-

---

may not be ripe for review under § 1581(a) does not make the remedy inadequate." *Uniroyal,* 69 CCPA at —— n. 9, 687 F.2d at 475 n. 9 (Nies, J., concurring) (citing *J.C. Penney Co. v. United States Treasury Department,* 439 F.2d 63, 68 (2d Cir.), *cert. denied,* 404 U.S. 869, 92 S.Ct. 60, 30 L.Ed.2d 113 (1971)).

**6.** In *PPG Industries, Inc. v. United States,* 2 CIT 110, 525 F.Supp. 883 (1981), which predated *Uniroyal,* a case bearing facts quite similar to those in the matter at bar, the plaintiff brought suit challenging the authority of the International Trade Administration to deny a request for a disclosure conference in connection with a section 751 antidumping duty order. The plaintiff asserted jurisdiction under section 1581(i). It was quite clear in *PPG Industries* that the plaintiff was attempting to have the court review a purely interlocutory decision. The court quite

correctly deemed this inappropriate and dismissed the action. Notably, however, the dismissal was on the ground that the plaintiff had failed to state a claim as to which relief may be granted. Jurisdiction was presupposed to have existed under section 1581(i). Indeed, in that case the government conceded as much:

> We recognize that this Court has subject matter jurisdiction over claims of the type PPG now brings; we contend, however, that any cause of action PPG may eventually have has not yet accrued and thus may not be maintained at this time.

Defendant's Reply Memorandum at 1–2, *PPG Industries, Inc. v. United States,* 2 CIT 110, 525 F.Supp. 883 (1981); *see Wear Me Apparel Corp. v. United States,* 1 CIT 194, 196, 511 F.Supp. 814, 817 (1981) ("section 1581(i) does not require the filing or denial of a protest as a prerequisite for the exercise of jurisdiction by this court").

mined whether or not the plaintiff's allegations state a claim upon which relief may be granted. The court holds they do not.

■ Where administrative proceedings are in process, and the agency has not adopted a final decision, the matter is generally not ripe for judicial review. *See Abbott Laboratories v. Gardner*, 387 U.S. 136, 148–49, 87 S.Ct. 1507, 1515–16, 18 L.Ed.2d 681 (1967); *Krupp Stahl AG v. United States*, 553 F.Supp. 394 (1982). The facts in the instant case indicate that Commerce has not completed the administrative review for the 1980 entries and the possibility exists that the final agency determination may indicate that there were no subsidies, in which event the plaintiff would presumably find no reason to complain. In the interest of efficient agency action, interlocutory determinations should not be considered when final agency decisions are judicially reviewable. *See PPG Industries, Inc. v. United States*, 2 CIT 110, 112, 525 F.Supp. 883, 884–85 (1981).

■ Plaintiff, alleging irreparable harm, has requested preliminary injunctive relief. The court denies such relief for the reasons assigned below.

The relevant factors for determining whether or not an injunction should issue were set out in *S.J. Stile Associates Ltd. v. Snyder*, 68 CCPA 27, 646 F.2d 522 (1981):

> (1) A threat of immediate irreparable harm; (2) that the public interest would be better served by issuing than by denying the injunction; (3) a likelihood of success on the merits; and (4) that the balance of hardship on the parties favored [movant].

*Id.* at 30, 646 F.2d at 525.

In *American Air Parcel, supra,* the court pointed out that although the plaintiff bears the burden of persuasion, the movant is not required to sustain the high burden of proof as to each of the four factors. The balance of hardship test permits the court flexibility and sound discretion in applying the four factors in granting or denying a request for preliminary

injunctive relief. 1 CIT at 298, 515 F.Supp. at 52.

Plaintiff contends its members will be irreparably harmed if Commerce completes its administrative review for the 1980 entries and continues its 1981 review, arguing its members have already sold merchandise included in the 1980 entries and will further be forced to endure business uncertainty occasioned by contingent and unknown economic and tax liabilities. This court cannot agree that this harm complained of is of the magnitude contemplated for the issuance of a preliminary injunction. This court does not find plaintiff will suffer irreparable harm by awaiting the final agency determination.

Furthermore, judicial review must properly await final determination when the issues are ripe. *Abbott Laboratories*, 387 U.S. at 148–49, 87 S.Ct. at 1515–16; *Krupp Stahl AG*, 553 F.Supp. 394.

■ The Court now turns to plaintiff's request for a writ of mandamus. The court finds the application inappropriate and premature. Mandamus is an extraordinary remedy and should be employed only when necessary and when no meaningful alternatives are available. *Canadian Tarpoly Co. v. United States International Trade Commission*, 68 CCPA 121, 123, 640 F.2d 1322, 132 (1981). In this case, plaintiff must await the final determination to find relief.

It is, therefore, ordered and adjudged:

1. Plaintiff's application for a writ of mandamus is denied;

2. Plaintiff's application for a preliminary injunction to enjoin the Secretary of Commerce from issuing a final determination in the section 751 administrative review of the countervailing duty order covering January 4, 1980 through December 31, 1980 entries of certain nonrubber footwear from Brazil is denied;

3. Plaintiff's application to enjoin the Secretary of Commerce from directing the United States Customs Service to assess any countervailing duties on those entries

greater than the amount already deposited with Customs as estimated countervailing duties is denied;

4. Plaintiff's application for a preliminary injunction to enjoin the Secretary of Commerce from conducting an administrative review of January 1, 1981 through September 11, 1981 entries of nonrubber footwear from Brazil covered by an outstanding countervailing duty order is denied;

5. Defendant's cross-motion to dismiss for failure to state a claim as to which relief may be granted is granted.

It is so ordered.